Thomas P. Smith, Jr.
Alison T. Conn
Travis Hill
Elizabeth Butler
Tiantong Wen
Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
New York Regional Office
100 Pearl Street
Suite 20-100
New York, NY 10004-2616
212-336-9135 (Hill)
HillTr@sec.gov

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>        Plaintiff,<br><br>  -against-<br><br>Roderick Vanderbilt,<br><br>        Defendant. | **COMPLAINT**<br><br>**25 Civ. 4994**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Securities and Exchange Commission ("Commission"), for its Complaint against Defendant Roderick Vanderbilt ("Vanderbilt" or "Defendant"), alleges as follows:

## SUMMARY

1. From at least October 2021 to 2023 (the "Relevant Period"), Vanderbilt participated in a scheme with his long-time business associate and former romantic partner, Theodore J. Farnsworth ("Farnsworth"), to defraud the investing public. As the nominal Chairman and Executive Chairman of the Board of Directors of Vinco Ventures, Inc. ("Vinco")—a public company secretly controlled by Farnsworth—Vanderbilt made material

1

misrepresentations in filings with the Commission and diverted Vinco's corporate assets for his and Farnsworth's personal benefit.

2.  During the Relevant Period, Vanderbilt signed numerous public filings on behalf of Vinco, including a Form 10-K, Forms 10-Q, preliminary and definitive proxy statements, and proxy soliciting materials, that contained materially false and misleading statements relating to Vinco's management and its business operations.

3.  Vanderbilt also diverted millions of dollars of Vinco money to Farnsworth, who used the money to pay for personal expenses, including travel, luxury vehicles, and home renovations, and to financially support Vanderbilt.

4.  Through his participation in the fraudulent scheme, Vanderbilt received financial benefits totaling at least hundreds of thousands of dollars.

5.  Meanwhile, Vinco's stock price plummeted from a peak of $6.38 during the Relevant Period to just fractions of a penny, leaving Vinco investors with substantial financial losses.

## VIOLATIONS

6.  By virtue of the foregoing conduct and as alleged further herein, Vanderbilt has violated Sections 17(a)(1) and 17(a)(3) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. §§ 77q(a)(1) and 77q(a)(3)], Sections 10(b) and 14(a) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. §§ 78j(b) and 78n(a)], and Rules 10b-5 and 14a-9 thereunder [17 C.F.R. §§ 240.10b-5 and 240.14a-9].

7.  Unless Defendant is restrained and enjoined, he will engage in the acts, practices, transactions, and courses of business set forth in this Complaint or in acts, practices, transactions, and courses of business of similar type and object.

## NATURE OF THE PROCEEDINGS AND RELIEF SOUGHT

8.  The Commission brings this action pursuant to the authority conferred upon it by Securities Act Sections 20(b) and 20(d) [15 U.S.C. §§ 77t(b) and 77t(d)] and Exchange Act Section 21(d) [15 U.S.C. § 78u(d)].

9.  The Commission seeks a final judgment: (a) permanently enjoining Defendant from violating the federal securities laws and rules this Complaint alleges he has violated; (b) ordering Defendant to disgorge all ill-gotten gains he received as a result of the violations alleged here and to pay prejudgment interest thereon, pursuant to Exchange Act Sections 21(d)(3), 21(d)(5), and 21(d)(7) [15 U.S.C. §§ 78u(d)(3), 78u(d)(5), and 78u(d)(7)]; (c) ordering Defendant to pay civil money penalties pursuant to Securities Act Section 20(d) [15 U.S.C. § 77t(d)] and Exchange Act Section 21(d)(3) [15 U.S.C. § 78u(d)(3)], (d) permanently prohibiting Defendant from serving as an officer or director of any company that has a class of securities registered under Exchange Act Section 12 [15 U.S.C. § 78l] or that is required to file reports under Exchange Act Section 15(d) [15 U.S.C. § 78o(d)], pursuant to Securities Act Section 20(e) [15 U.S.C. § 77t(e)] and Exchange Act Section 21(d)(2) [15 U.S.C. § 78u(d)(2)]; and (e) ordering any other and further relief the Court may deem just and proper.

## JURISDICTION AND VENUE

10. This Court has jurisdiction over this action pursuant to Securities Act Section 22(a) [15 U.S.C. § 77v(a)] and Exchange Act Section 27 [15 U.S.C. § 78aa].

11. Defendant, directly and indirectly, has made use of the means or instrumentalities of interstate commerce or of the mails in connection with the transactions, acts, practices, and courses of business alleged herein.

12.     Venue lies in this District under Securities Act Section 22(a) [15 U.S.C. § 77v(a)] and Exchange Act Section 27 [15 U.S.C. § 78aa].  Defendant transacted business in the Southern District of New York and certain of the acts, practices, transactions, and courses of business alleged in this Complaint occurred within this District.  For example, Vinco's securities were traded by, and offered and sold to, individuals and entities who resided in or were located in Manhattan.

**DEFENDANT**

13.     **Vanderbilt**, age 59, is a resident of Miami, Florida.  Since approximately October 2021, Vanderbilt has held the title of Chairman of the Vinco Board.  In approximately December 2022, Vanderbilt also assumed the title of Executive Chairman of Vinco.  Vanderbilt was also nominally a co-founder of a Farnsworth-controlled company, Zash Global Media & Entertainment Corporation ("Zash").  Vanderbilt had a decades-long personal and professional relationship with Farnsworth, throughout which he relied on Farnsworth for financial support.

**OTHER RELEVANT INDIVIDUALS AND ENTITIES**

14.     **Vinco** is a Nevada corporation formed in 2017, which is currently in default status with the Nevada Secretary of State.  From at least January 2021 through April 2023, Vinco had offices in East Syracuse, New York.  Vinco's common stock is registered with the Commission pursuant to Section 12(b) of the Exchange Act.  Until October 2023, Vinco's stock traded on the NASDAQ.  Since then, it has been quoted on OTC Link, operated by OTC Markets Group Inc., under the ticker symbol "BBIG."

15.     **Zash** is a Delaware corporation headquartered in East Syracuse, New York, which is currently in inactive status with the Delaware Division of Corporations.  Zash was founded in or around December 2020 by Farnsworth and, nominally, Vanderbilt.  Zash held

itself out as "an evolved network of synergetic companies working together to disrupt the media and entertainment industry as we know it today."

16.     **Farnsworth,** age 62, was the co-founder, chairman, and controlling stockholder of Zash and a member of the board of managers of ZVV Media Partners LLC ("ZVV"), a joint venture between Vinco and Zash. During at least the Relevant Period, Farnsworth controlled Vinco, even though he did not have a formal title for most of that period. In December 2022, he became Vinco's Chief Strategy Officer.

17.     Farnsworth is a defendant in *SEC v. Farnsworth*, 24 Civ. 9911 (JAV) (S.D.N.Y. filed Dec. 23, 2024), in which the Commission alleged, among other things, that Farnsworth defrauded the investing public through material misrepresentations concerning Vinco. Farnsworth is also a defendant in *SEC v. Farnsworth, et al.*, 22 Civ. 8226 (KPF) (S.D.N.Y. filed Sept. 26, 2022, amended Oct. 6, 2023), in which the Commission alleged, among other things, that Farnsworth disseminated materially false or misleading statements to the public while serving as the chairman and CEO of Helios and Matheson Analytics Inc. ("HMNY"), the parent company to MoviePass, Inc., ("MoviePass"), a movie subscription service. On January 7, 2025, Farnsworth pled guilty in a criminal case captioned *United States v. Farnsworth*, 22 Cr. 20521-DSL (S.D. Fla.), to securities fraud in connection with his conduct relating to MoviePass/HMNY and to conspiracy to commit securities fraud in connection with his conduct relating to Vinco.

## FACTS

**I.     BACKGROUND: VANDERBILT, FARNSWORTH, AND VINCO**

18.     Farnsworth and Vanderbilt had a decades-long personal and professional relationship.

19.     For more than thirty years, Farnsworth was Vanderbilt's primary source of financial support.

20. In or around December 2020, Farnsworth (with Vanderbilt as a nominal co-founder) formed Zash to serve as a holding company for media assets Farnsworth planned to acquire in an attempt to create a "disruptive" media and entertainment business.

21. Farnsworth intended to merge Vinco, a public company, into Zash, with Zash as the surviving entity.

22. Farnsworth did not take a public-facing role at Vinco because he knew, by at least December 2020, that the Department of Justice and the Commission were conducting investigations concerning his conduct in connection with another public company.

23. Nevertheless, during at least the Relevant Period, Farnsworth secretly controlled Vinco.

24. For example, Farnsworth installed individuals with whom he had close personal and/or professional relationships, including Vanderbilt, as executives and directors of Vinco.

25. In October 2021, Vanderbilt, who was hand-selected by Farnsworth, joined the Vinco Board.

26. In spite of the fact that Farnsworth was controlling Vinco, Vanderbilt was named Executive Chairman of the Vinco Board in December 2022.

27. Around the same time, Farnsworth assumed the title of Vinco's Chief Strategy Officer.

28. Although Vanderbilt participated in Vinco Board meetings and was involved to some extent in Vinco's day-to-day operations, Farnsworth in fact controlled Vinco.

29. Throughout the Relevant Period, Farnsworth directed Vinco's strategic vision, made major corporate decisions, decided how Vinco should spend its money, and oversaw Vinco's public relations and marketing efforts.

## II. VANDERBILT CONCEALED FARNSWORTH'S CONTROL OVER VINCO

30. From April 2022 to April 2023, Vanderbilt signed numerous filings with the Commission as an officer and/or director of Vinco, including a Form 10-K filed with the Commission on April 15, 2022; Forms 10-Q filed with the Commission on February 21, 2023 and April 10, 2023; preliminary and definitive proxy statements filed with the Commission on March 9, 2023 and March 31, 2023; and proxy soliciting materials filed with the Commission on April 17, and April 25, 2023 (collectively, the "Subject Filings").

31. The Subject Filings identified putative officers and directors at Vinco, but failed to disclose Farnsworth's involvement in Vinco's management, even though he directed the officers and directors identified in the filings and exercised ultimate control over Vinco.

32. None of the Subject Filings disclosed Farnsworth's control over Vinco or even his formal position, beginning in December 2022, as Chief Strategy Officer.

33. The Subject Filings' representations about Vinco's leadership were false or misleading because Farnsworth—not the putative officers and directors identified—was controlling Vinco's operations.

34. Furthermore, the representations in the Subject Filings concerning Vinco's senior leadership would have been important to a reasonable investor because, as Vanderbilt understood from Farnsworth, once Farnsworth had been publicly charged by the Commission and criminal authorities, disclosing that he controlled Vinco would make the company less attractive to investors.

35. Vanderbilt knew, or was reckless in not knowing that the representations in the Subject Filings were false or misleading by virtue of his awareness that Farnsworth directed major decision-making by Vinco's nominal officers and directors, including himself.

### III.  VINCO'S INABILITY TO FUND ITS BUSINESS OPERATIONS

36. When Vinco and Zash announced their agreement to merge in January 2021, they claimed that they would "creat[e] exciting acceleration and growth in live-streaming content, video-sharing, distribution and production within [the combined Vinco/Zash] ecosystem."

37. Two key facets of the supposed Vinco/Zash ecosystem were Lomotif Private Limited ("Lomotif"), which held itself out as a video-sharing social networking platform, and AdRizer LLC ("AdRizer"), a social media advertising company. Vinco purportedly planned to generate advertising revenue by integrating AdRizer's social media advertising platform with Lomotif.

38. As Vanderbilt was aware by virtue of the information he received through his position on the Vinco Board, Lomotif depended on cash infusions from Vinco for its operations.

39. Based on emails he received, Vanderbilt also knew by no later than February 2023, that Vinco no longer had the means to fund Lomotif and Lomotif was preparing to shut down its operations.

40. Vanderbilt also knew that by early April 2023, all of Lomotif's employees had been furloughed, except for three engineers whose sole focus was on keeping the app feed and view operational so that the public would not realize that normal business operations had ceased.

41. By no later than February 2023, AdRizer was also experiencing significant financial challenges, partly because, as Vanderbilt was aware, Vinco failed to provide promised working capital for AdRizer's operations.

42. By no later than February 2023, AdRizer personnel, including its CEO, expressed concerns in emails to Vanderbilt about Vinco's financial condition and ability to fund AdRizer.

43.     In early April 2023, AdRizer's CEO advised Vanderbilt that he intended to resign because, among other things, Vinco did not have enough money to operate its businesses, including AdRizer.

## IV.     VANDERBILT MADE MATERIALLY FALSE OR MISLEADING STATEMENTS CONCERNING VINCO'S BUSINESS OPERATIONS

44.     Notwithstanding the facts set forth in paragraphs 36 through 43 above, in April 2023, Vanderbilt, with Farnsworth's approval, made a series of statements materially misrepresenting the operational status of Lomotif and AdRizer and their potential to generate revenue for Vinco.

45.     On April 10, 2023, Vinco filed its Form 10-Q for the third quarter of 2022, signed by Vanderbilt. The filing referred to Vinco's "strategy" to "expand[ ] Lomotif's reach," stated that Vinco was "developing means to monetize the content creation and streaming capabilities of the Lomotif platform," and stated that "AdRizer is anticipated to generate advertising revenue through ad placements in the Lomotif app and on Lomotif websites based on traffic, views, and impressions."

46.     The statements in Vinco's form 10-Q filed on April 10, 2023 were false or misleading because, as Vanderbilt knew or recklessly disregarded, both Lomotif and AdRizer had ceased normal business operations by no later than early April 2023 due to insufficient funding, as described in paragraphs 36 through 43 above.

47.     On April 17, 2023, Vanderbilt issued a letter to shareholders urging them to vote for the company's proposals at the upcoming annual shareholders meeting on April 27, 2023. The text of the letter was included in proxy soliciting material filed with the Commission on April 17, 2023, which Vanderbilt also signed.

48.     The April 17, 2023 letter described Lomotif and AdRizer as operational, synergetic businesses.  Specifically, in describing Vinco's anticipated acquisition of a media company, the letter outlined the planned "integration" of the media company's content "into the Vinco ecosystem," including with Lomotif and AdRizer.

49.     On April 25, 2023, the Vinco Board issued a letter to shareholders, also in advance of the shareholders meeting.  The text of the letter was included in proxy soliciting material filed with the Commission on April 25, 2023, which Vanderbilt signed.

50.     The April 25, 2023 letter again described Lomotif and AdRizer as if they were operational businesses.  In particular, the letter highlighted that Lomotif and AdRizer would be one of the "key pillars of value creation" in the anticipated acquisition of the media company, stating that "Vinco intends to integrate and promote the Company's social media platform, Lomotif … across the online and print publishing group's pages, as well as harmoniously publishing original content with the … AdRizer network[ ]."

51.     The descriptions of Lomotif and AdRizer in the April 17 and April 25, 2023 letters were false or misleading because, as Vanderbilt knew or recklessly disregarded, both Lomotif and AdRizer had ceased normal business operations by no later than early April 2023 due to insufficient funding, as discussed in paragraphs 36 through 43 above.

**V.     VANDERBILT DIVERTED VINCO'S ASSETS FOR HIS OWN AND FARNSWORTH'S BENEFIT.**

52.     From January to July 2021, Vinco raised more than $120 million through the issuance of convertible notes and warrants.  On multiple occasions in 2022 and 2023, Vinco and the investor in these offerings entered agreements to amend the terms of the notes and warrants.

53.     In February 2023, Vinco offered and sold additional securities to institutional investors, including the issuance of $11.5 million in convertible notes.

54. After joining the Vinco Board in October 2021, Vanderbilt followed Farnsworth's instructions to divert millions of dollars raised in the 2021 offerings to Farnsworth, in contravention of the representations made to investors in the securities purchase agreements that the funds would be used for corporate purposes.

55. Farnsworth, in turn, used money he received from Vinco to pay for personal expenses including, among other things, travel, luxury vehicles, and home renovations, as well as to financially support Vanderbilt.

56. From October 2021 to March 2022, Farnsworth gave Vanderbilt approximately $170,000 in cash to pay for Vanderbilt's personal expenses.

57. During at least the Relevant Period, Farnsworth also permitted Vanderbilt to regularly use luxury vehicles that had been purchased with diverted Vinco funds.

58. During the Relevant Period, Vanderbilt had credit cards in his name that both he and Farnsworth used to charge personal expenses. Farnsworth and Zash paid Vanderbilt's credit card bills, in an amount totaling approximately $1.5 million, at least partially using money diverted from Vinco.

59. The benefits set forth in paragraphs 55 to 58 above were in addition to Vanderbilt's salary from Vinco, which totaled approximately $160,000 in 2022 and $190,000 in the first half of 2023, as well as fees of approximately $118,000 that he received during the Relevant Period for serving on the Vinco Board.

**FIRST CLAIM FOR RELIEF**
**Violations of Securities Act Section 17(a)(1) and 17(a)(3)**

60. The Commission re-alleges and incorporates by reference here the allegations in paragraphs 1 through 59.

61. Defendant, directly or indirectly, singly or in concert, in the offer or sale of securities and by the use of the means or instruments of transportation or communication in interstate commerce or the mails, (i) knowingly or recklessly have employed one or more devices, schemes or artifices to defraud, and/or (ii) knowingly, recklessly, or negligently have engaged in one or more transactions, practices, or courses of business which operated or would operate as a fraud or deceit upon the purchaser.

62. By reason of the foregoing, Defendants, directly or indirectly, singly or in concert, have violated and, unless enjoined, will again violate Securities Act Sections 17(a)(1) and 17(a)(3) [15 U.S.C. §§ 77q(a)(1) and 77q(a)(3)].

## SECOND CLAIM FOR RELIEF
### Violations of Exchange Act Section 10(b) and Rule 10b-5 Thereunder

63. The Commission re-alleges and incorporates by reference here the allegations in paragraphs 1 through 59.

64. Defendant, directly or indirectly, singly or in concert, in connection with the purchase or sale of securities and by the use of means or instrumentalities of interstate commerce, or the mails, or the facilities of a national securities exchange, knowingly or recklessly has (i) employed one or more devices, schemes, or artifices to defraud, (ii) made one or more untrue statements of a material fact or omitted to state one or more material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, and/or (iii) engaged in one or more acts, practices, or courses of business which operated or would operate as a fraud or deceit upon other persons.

65. By reason of the foregoing, Defendant, directly or indirectly, singly or in concert, has violated and, unless enjoined, will again violate Exchange Act Section 10(b) [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## THIRD CLAIM FOR RELIEF
### Violations of Exchange Act Section 14(a) and Rule 14a-9 Thereunder

66. The Commission re-alleges and incorporates by reference here the allegations in paragraphs 1 through 29, 36 through 43, and 47 through 51.

67. By engaging in the conduct described above, Defendant, by use of the mails, or the means of instrumentalities of interstate commerce or any facility of a national securities exchange, solicited proxies by means of a proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing statements which, at the time and in light of the circumstances under which they are made, were false or misleading with respect to a material fact, or omitted to state material facts necessary to make the statement therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

68. By reason of the foregoing, Defendant, directly or indirectly, singly or in concert, has violated and, unless enjoined, will again violate Exchange Act Section 14(a) [15 U.S.C. § 78n(a)] and Rule 14a-9 thereunder [17 C.F.R. § 240.14a-9].

## PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that the Court enter a Final Judgment:

### I.

Permanently enjoining Vanderbilt and his agents, servants, employees and attorneys and all persons in active concert or participation with any of them from violating, directly or indirectly, Securities Act Sections 17(a)(1) and 17(a)(3) [15 U.S.C. §§ 77q(a)(1) and 77q(a)(3)], Exchange Act Sections 10(b) and 14(a) [15 U.S.C. §§ 78j(b) and 78n(a)], and Rules 10b-5 and

14a-9 thereunder [17 C.F.R. §§ 240.10b-5 and 240.14a-9].

**II.**

Ordering Vanderbilt to disgorge all ill-gotten gains he received directly or indirectly, with pre-judgment interest thereon, as a result of the alleged violations, pursuant to Exchange Act Sections 21(d)(3), 21(d)(5), and 21(d)(7) [15 U.S.C. §§ 78u(d)(3), 78u(d)(5), and 78u(d)(7)];

**III.**

Ordering Vanderbilt to pay civil monetary penalties under Securities Act Section 20(d) [15 U.S.C. § 77t(d)] and Exchange Act Section 21(d)(3) [15 U.S.C. § 78u(d)(3)];

**IV.**

Permanently prohibiting Vanderbilt from serving as an officer or director of any company that has a class of securities registered under Exchange Act Section 12 [15 U.S.C. § 78l] or that is required to file reports under Exchange Act Section 15(d) [15 U.S.C. § 78o(d)], pursuant to Securities Act Section 20(e) [15 U.S.C. § 77t(e)] and Exchange Act Section 21(d)(2) [15 U.S.C. § 78u(d)(2)];

**V.**

Granting any other and further relief this Court may deem just and proper.

**JURY DEMAND**

The Commission demands a trial by jury.

Dated: New York, New York
       June 13, 2025

*/s/ Travis Hill*
_____
Travis Hill
Thomas P. Smith, Jr.
Alison T. Conn
Elizabeth Butler
Tiantong Wen
Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
New York Regional Office
100 Pearl Street
Suite 20-100
New York, NY 10004-2616
212-336-9135 (Hill)
HillTr@sec.gov